IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| ZAKAI ZEIGLER, | ) |
|---|---|
| Plaintiff, | ) |
| | ) Case No. 3:25-cv-00226 |
| v. | ) |
| | ) |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) |
| | ) |
| Defendant. | ) |

**SUPPLEMENTAL BRIEF IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to the Court's Order (Dkt. 35), Mr. Zeigler submits this Supplemental Brief in Support of his Motion for a Preliminary Injunction.

### I. Mr. Zeigler is an "Intercollegiate Athlete."

Zakai Zeigler is an "intercollegiate athlete" under Tenn. Code Ann. § 49-7-2801(6). This statute was designed to protect the rights of student-athletes who are enrolled and who might enroll in the future in Tennessee universities to play sports.

The Court's inquiry should begin and end with the plain language of the statute. As the Sixth Circuit has repeatedly affirmed, where "the statute's language is plain, the sole function of the court is to enforce it according to its terms." *Chapman v. The Higbee Company*, 319 F.3d 825, 829 (6th Cir. 2003). If the words are unambiguous, "judicial inquiry is complete." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002). Only if the language is genuinely unclear should a court venture beyond the text to consider legislative intent. *United States v. Mills*, 140 F.3d 630, 633 (6th Cir. 1998).

The Tennessee statute defines "intercollegiate athlete" in Tenn. Code Ann. § 49-7-2801(6) as: "[1] a student who is enrolled in an institution and participates in an athletic program or [2] a prospective student who has started or completed ninth grade and can, in the future, enroll in an institution and participate in an athletic program." Mr. Zeigler's unique situation, having just graduated but intending immediate future enrollment and participation on the men's basketball team at the University of Tennessee, fits squarely within this second, expansive clause.

The legislative history of the statute confirms that the second clause includes Mr. Zeigler. The 2024 amendment specifically *added* the "prospective student" clause about future enrollment. *Cf.* Tenn. Code Ann. § 49-7-2801(4) (2022). This was not a mere clarification but an intentional expansion of the statute's reach. When a legislature adds new language, it is presumed to do so with purpose. *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 705 (1995). And when legislatures go "out of [their] way to add [words] to an important statutory definition," the addition must be given a "respectful reading." *Id*.

The addition of the "prospective student" clause demonstrates a clear legislative intent to protect individuals whose connection to an athletic program is based on their *future* ability to enroll and participate, ensuring that protections are in place even before formal enrollment or competition begins. Mr. Zeigler, as a graduate who "can, in the future, enroll" and "can, in the future, participate," resides comfortably within the expanded scope of protections intended by the law.

2

*First*, he "has started or completed ninth grade." It is undisputed that Mr. Zeigler has not only completed ninth grade but also has successfully earned a bachelor's degree from the University of Tennessee.

*Second*, he "can, in the future, enroll in an institution." Mr. Zeigler has a clear and stated intention to enroll as a graduate student at the University of Tennessee for the upcoming 2025-26 academic year. This future enrollment is not speculative; it is a concrete plan for the immediate academic term. While he has just graduated, for the purposes of his *next* academic phase, he is indeed a "prospective student" for graduate studies. The statute does not limit "prospective student" to only those coming directly from high school; it broadly covers *anyone* who "can, in the future, enroll in an institution." Mr. Zeigler can, and he intends to.

*Third*, he "can, in the future . . . participate in an athletic program." Notably, "athletic program" is a defined term in SB 536, encompassing "an intercollegiate athletic program *at an institution*." Tenn. Code Ann. § 49-7-2801(3) (emphasis added). Mr. Zeigler's intention is to continue his athletic career on the men's basketball team at the University of Tennessee, which is "an intercollegiate athletic program at an institution." *Id.* And since the University of Tennessee, which is the "institution" at issue in section 2801(3), has guaranteed him a roster spot to do so, the record shows that he "can . . . participate in an athletic program."

At the hearing, Defendant argued that the phrase "can . . . participate" means that Mr. Zeigler must be eligible to participate under *its own* eligibility rules. But this argument assumes its own premise: that the NCAA—rather than the *institution*—

3

determines who gets to "participate in an athletic program [at an institution]." This reading contradicts the purpose of the law altogether. *See* Tenn. Code Ann. § 49-7-2801(3) (defining an "athletic program" as one "at an institution"); § 2803(a)(1) (prohibiting the NCAA from adversely "impact[ing] an intercollegiate athlete's eligibility or full *participation* in intercollegiate athletic events") (emphasis added); § 2802(b)(4) (prohibiting the NCAA from "compel[ling] an institution . . . [to] risk violating state or federal law). As these provisions show, SB 536 places all decisions about participation in athletics in the hands of the institution. *See also* SB 536 (Recitals) (declaring it the "public policy [of Tennessee] that *institutions* and their athletic programs are encouraged to compete nationally" . . . and that "Tennessee *institutions* and their athletic programs need certainty . . .") (emphases added).

Because Mr. Zeigler has completed ninth grade, and unequivocally "can, in the future, enroll in an institution and participate in an athletic program" at the University of Tennessee, he meets the statutory definition of an "intercollegiate athlete." The language is unambiguous. And the statute should be enforced according to its clear terms, providing Mr. Zeigler the protections it was designed to offer.

## II. The Legal Standard Under the Tennessee Trade Practices Act.

Under the Tennessee Trade Practices Act ("TTPA"), Tenn. Code Ann. § 47-25-101, "a plaintiff must prove that the defendant entered into an anticompetitive agreement that 'affects Tennessee trade or commerce to a substantial degree.'" *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662 (6th Cir. 2009) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 523 (Tenn.

4

2005)). In adopting the "substantial effects" standard for TTPA claims, the Tennessee Supreme Court noted that "[f]ederal courts have applied the substantial effects standard to the Sherman Antitrust Act." *Freeman Indus.*, 172 S.W.3d at 523 (citing *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 796 (1993); *McLain v. Real Estate Bd. Of New Orleans, Inc.*, 444 U.S. 232, 242 (1980)).

In reaching its holding, the Tennessee Supreme Court relied on the purpose and the text of the TTPA. The purpose of the TTPA "is to protect the state's trade or commerce affected by the anticompetitive conduct." *Freeman Indus.*, 172 S.W.3d at 522. The Legislature enacted the TTPA to "correct and punish the wrongs to trade that were being perpetrated against commerce within the state, which the Sherman Antitrust Act could not reach and for which no efficient remedy was available." *Id.* at 521. The TTPA also applies to interstate commerce because it "does not contain any language indicating that the legislature intended that the scope of the act be limited to intrastate commerce." *Id.* at 522.

To analyze a claim under Tennessee antitrust law, courts mirror the approach federal courts take with the Sherman Act. *See, e.g.*, *Baird v. Smith,* 161 S.W. 492, 493 (Tenn. 1913) (holding that "the test" under Tennessee antitrust law is whether the contract tends to "work an undue or *unreasonable* restraint" on competition) (emphasis added); *Spahr v. Leegin Creative Leather Prods., Inc.*, No. 2:07-CV-187, 2008 WL 3914461, at *14 (E.D. Tenn. Aug. 20, 2008) (dismissing TTPA claim).

Although the Court should begin its analysis under the TTPA by mirroring the analysis required under Sherman Act, the state law analyses of (1) the commercial

5

effect of the challenged rule and (2) the Rule of Reason are directly impacted by SB 536.

1.

As to the first, by enacting SB 536, the Tennessee General Assembly made clear that the state's antitrust laws apply to the NCAA and its rules. In the recitals, the law directs that "it is contrary to public policy for an institution's athletic association transacting business in Tennessee," which the NCAA conceded at the hearing described it, "to create anticompetitive restrictions that lessen, or tend to lessen, full and free competition in trade or commerce affecting this State or to otherwise violate state and federal law." And the text of the law specifically requires that the NCAA not "establish, adopt, promulgate, implement, or enforce any rule, standard, procedure, policy, or guideline that violates an applicable state or federal antitrust law." Tenn. Code Ann. § 49-7-2802(b)(3)(C).

2.

SB 536 impacts the Rule of Reason analysis as well. In the very next section after it references antitrust law, the newly enacted law states that the NCAA shall not "[i]nterfere with, prohibit, restrict, or otherwise adversely affect an intercollegiate athlete's ability to earn compensation . . . and shall not otherwise impact an intercollegiate athlete's eligibility or full participation in intercollegiate athletic events." Tenn. Code Ann. § 49-7-2803(a)(1). This section is broad and unambiguously clear: Any NCAA action that impacts an athlete's ability to earn NIL compensation *or* his or her eligibility, like the Four-Seasons Rule, is illegal in Tennessee. Moreover,

6

the statute explicitly empowers the state's Attorney General to "bring any appropriate action or proceeding against [the NCAA] in any court of competent jurisdiction pursuant to this part." § 2803(a)(4).

This means that the NCAA cannot rely on the purported procompetitive benefits of its eligibility rules, including the Four-Seasons Rule. *Cf. Worldwide Basketball & Sport Tours, Inc. v. Nat'l Collegiate Athletic Ass'n.*, 388 F.3d 955, 959 (6th Cir. 2004) (stating that such purported benefits must be "legitimate procompetitive" justifications). At least in Tennessee, after the enactment of SB 536, the Four-Seasons Rule violates state law and cannot be implemented as a legal commercial restraint.

All the NCAA's purported procompetitive benefits rely on violating SB 536: differentiating Division I basketball from professional basketball, limiting the pool of Division I basketball players, and allowing continuous opportunity to other players. In addition to the problems noted in briefing and at the hearing about the NCAA's assertions, each of these claimed "benefits" depend on the NCAA "restrict[ing], or otherwise adversely affect[ing]" an intercollegiate athlete's "eligibility." § 2803(a)(1). Simply put, there can be no "legitimate" procompetitive justification for a rule that violates laws outside the antitrust context. Thus, because the challenged rule is illegal under SB 536, and section 2803(a)(1) specifically, the NCAA has no actual "legitimate procompetitive" justifications, at least in the State of Tennessee, and Mr. Zeigler must prevail on his TTPA claim.

7

Respectfully submitted,

*/s/ Alex Little*
J. Alex Little (TN BPR #29858)
Zachary C. Lawson (TN BPR #36092)
LITSON PLLC
111 East Jackson Ave, Suite 203
Knoxville, TN 37915
Telephone: 615-985-8205
zack@litson.co | alex@litson.co

*/s/ Marcos M. Garza*
Marcos M. Garza (TN BPR #21483)
Brent Morris (TN BPR #24621)
Anderson Cofer (*Pro Hac* Pending)
GARZA LAW FIRM, PLLC
550 W. Main Street, Suite 340
Knoxville, Tennessee 37902
Telephone: 865-540-8300
Mgarza@garzalaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of June, 2025, a true and correct copy of the foregoing has been served via the Court's CM/ECF system upon all counsel of record.

*/s/ Alex Little*