IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

ZAKAI ZEIGLER,

    *Plaintiff*,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,

    *Defendant*.

Case No. 3:25-CV-00226-KAC-DCP

JUDGE CRYTZER

MAGISTRATE JUDGE POPLIN

**NCAA RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF**

Plaintiff's Supplemental Brief continues his effort to dismantle the NCAA membership's longstanding eligibility rules by any means necessary—this time through a tortured reading of an irrelevant law. Common sense dictates that the new Tennessee statute has nothing to do with this case: The State's flagship institution (which happens to be the school Plaintiff attended) is a member of an athletic conference that has agreed to a settlement that expressly *affirms* the NCAA's Four-Seasons Rule. That same institution, the University of Tennessee, obtained valuable legal releases pursuant to that settlement and unsurprisingly has repeatedly endorsed it. It is accordingly hard to imagine the Tennessee legislature passing a law so obviously at odds with the University of Tennessee's legal position and interests.

Unsurprisingly, ordinary principles of statutory interpretation confirm this straightforward conclusion. As a threshold matter, the statute is facially irrelevant to the suit. It provides no private right of action, nor "any . . . basis for injunctive or equitable relief by any private person[.]" Tenn. Code Ann. § 49-7-2803(a)(1). The law thus forecloses Plaintiff's argument, which is that the statute in fact does provide a "basis for injunctive or equitable relief." Beyond that, Plaintiff's interpretation of the statute fights the text by trying to fit him into statutory language regarding ninth graders that is clearly focused on incoming student-athletes, not students who obtained a four-year university degree. Moreover, adopting Plaintiff's reading requires the Court to disregard the canon of constitutional avoidance, because construing the statute to upend the NCAA's national eligibility rules at least raises substantial questions under the Dormant Commerce Clause.

Similarly, Plaintiff's argument that the statute purportedly undercuts the procompetitive benefits of the Four-Seasons Rule is devoid of applicable legal citation and would require this Court to conclude that Tennessee antitrust law is divorced from antitrust principles. The question

of whether procompetitive benefits exist is a fact-based *economics question*, not a question of law dictated by legislative pronouncement. The preliminary injunction should be denied.

1. **The Statute Itself Indicates that Plaintiff Cannot Avail Himself of its Pronouncements.**

As a threshold matter, SB 536 explicitly forecloses Plaintiff's reliance thereon in this action. Tennessee Code Annotated § 49-7-2803—the section on which Plaintiff relies—"does not authorize, create, or afford any private cause of action, liability, *or basis for injunctive or equitable relief by any private person*[.]" (emphasis added). That is exactly what Plaintiff is trying to do—rely on the statute to obtain injunctive relief.

The statute further notes that limitations on NIL payments are permissible if part of "[a] valid court order with binding jurisdiction over an institution and its intercollegiate athletes[.]" Tenn. Code Ann. § 49-7-2802. The *House* settlement, approved on Friday, indicates that the payments Plaintiff now claims he should receive from the University of Tennessee can be limited to four seasons of athletic eligibility over five years.[1] That is yet another reason why it remains permissible for the NCAA to continue to enforce its eligibility rules against Plaintiff.[2]

2. **A Plain Reading of the "Intercollegiate Athlete" Definition Indicates It Does Not Apply to Former Student-Athletes, like Plaintiff, Who Have Graduated from College and Utilized Their Eligibility.**

Plaintiff posits that the NCAA's enforcement of the Four-Seasons Rule violates Tennessee Code Annotated § 49-7-2803(a)(1)'s restriction on an athletic association "adversely affect[ing] an intercollegiate athlete's ability to earn compensation" or "impact[ing] an intercollegiate athlete's

---

[1] *See House v. NCAA*, No. 4:20-cv-3919-CW (N.D. Cal.) (ECF No. 717, at 20) ("The NCAA . . . may likewise adopt or affirm . . . rules governing the number of seasons/length of time student-athletes are eligible to receive benefits, including scholarships and payments, pursuant to this Injunctive Relief System, *including capping the number of years a student-athlete may receive payments at four years*, and providing that all four of those years must be played within a consecutive five-year period" (emphasis added)).

[2] Why employees of the University of Tennessee seem to be endorsing Plaintiff's quest in his supplementation of the record is thus unclear. As an NCAA member institution, the University of Tennessee adopted the Four-Seasons Rule, has never proposed any amendment thereto, and has ratified the NCAA's continued enforcement through the *House* settlement.

3

eligibility." His argument depends upon him counting as an "intercollegiate athlete," defined in the statute as "a student who is enrolled in an institution and participates in an athletic program or a prospective student who has started or completed *ninth grade and can, in the future*, enroll in an institution and participate in an athletic program." Tenn. Code Ann. § 49-7-2801(6) (emphasis added). Plaintiff concedes he is no longer a current student athlete and does not fit into the former category. (Supp. Br. at 2). Plaintiffs' view is instead that he counts as a "prospective student," even though he has *completed his college eligibility and obtained a degree*. (*Id.* at 3). That overbroad interpretation is as wrong as it sounds—under that approach, this Court, all counsel of record, and virtually everyone in the country who completed one year of high school would count as an "intercollegiate athlete."

The plain meaning of "prospective," as used in context, indicates this definition does not include students who have already exhausted their eligibility to participate in intercollegiate athletics. "Prospective" connotes not just a possibility, but a likelihood or expectancy. *See Prospective*, Black's Law Dictionary (12th ed. 2024) ("Anticipated or expected, likely to come about"); *Prospective*, Miriam Webster Online, https://www.merriam-webster.com/dictionary/prospective (last accessed June 8, 2025) ("likely to come about: EXPECTED" or "likely to be or become"). Plaintiff's ability to participate in a collegiate athletic program depends upon the grant of a mandatory injunction that would change the status quo[3]; he is neither currently likely nor expected to further participate in intercollegiate athletics, and thus is not a prospective student-athlete under the plain meaning of the statute. Moreover, "prospective"—given its use in *a reference to ninth graders*—suggests that "prospective" student-athletes encompass those who have not yet matriculated into an NCAA member institution, not

---

[3] He seeks the relief on a paper-thin record, developed in less than three weeks, which the Department of Justice's brief advises against.

those who have already completed four seasons of competition and graduated from college. This is consistent with the plain and ordinary meaning of "prospect" (the noun for which "prospective" is the adjectival form) in the context of college sports, which generally refers to a student-athlete who is being recruited from high school, not one who has completed competition.[4]

Plaintiff's analysis depends on the broadest possible reading of "can"—as having the ability to do something—to encompass all persons who can, at least theoretically, enroll in college and participate in an athletic program. The interpretation conflicts with the ordinary meaning of "can" used in the law, "to have permission." *See Can* Black's Law Dictionary (12th Ed. 2024) ("To have permission (as often interpreted by courts)"); *see also People v. West*, 724 P.2d 623, 627 (Colo. 1986) ("The word 'can' is an auxiliary verb. While it might in some context be used to express a contingency that might be possible, ***its primary meaning is to have permission to, to have a right to, or to be enabled by law***." (citation omitted) (emphasis added)). So construed, "can" reads in the concept of NCAA eligibility rules into the definition of "intercollegiate athlete." One "can" participate if permitted by the eligibility rules. Plaintiff is not, and therefore cannot.

Under Plaintiff's reading, as conceded at the hearing, anyone in Tennessee who has entered the ninth grade would qualify as an "intercollegiate athlete." The breadth of his interpretation would render the phrase "can, in the future, enroll in an institution and participate in an athletic program" superfluous. The preceding phrase captures the same person who would qualify as an "intercollegiate athlete" not yet enrolled in college—"a prospective student who has started or completed the ninth grade[.]" Only the NCAA's narrower reading of "can" gives the full text of the definition meaning, and the definition should be construed to avoid rendering any words

---

[4] *See, e.g.*, Paul Biancardi, ESPN "Scouting reports on top 2027 recruits from USA basketball training camp," https://www.espn.com/mens-college-basketball/story/_/id/44937321/boys-basketball-recruiting-no-1-players-2026-2027-2028-classes (describing one high school recruit as "ranked among the nation's top prospects").

5

selected by the legislature superfluous. *See Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001) ("Every word in the statute is presumed to have meaning, and we must give effect all the words to avoid an interpretation which would render words superfluous or redundant." (citations omitted)).

Moreover, if Plaintiff is an "intercollegiate athlete"—and he is not—that is not the end of the analysis. To apply to the facts at issue, he would have to demonstrate that the NCAA is "impact[ing]" his "eligibility." Plaintiff's argument suggests that ***the existence of any eligibility rules*** impacts eligibility because such rules adversely affect "intercollegiate athlete[s']" ability to participate in athletics. But the statute's reference to eligibility suggests the opposite—a ratification of the concept of eligibility rules—as without such rules, there exists no eligibility to be adversely affected. There is no indicia that the statute's scope condemns the Four-Seasons Rule.

### 3. To the Extent Instructive Legislative History or Historical Context Exists, it Supports the NCAA's Reading.

Plaintiff argues that the legislative history supports his argument without identifying any legislative history. Rather, he cites to the amendment including "prospective" athletes in the statute and asserts that the revision must support Zeigler's reading. (Supp. Br. at 2). He is mistaken.

Senate Bill 536 was offered against the backdrop of *Tennessee v. NCAA*, Case No. 3:24-cv-00033-DCLC-DCP (E.D. Tenn.) (filed in January of 2024). In that case, Judge Corker entered a preliminary injunction against enforcement of an NCAA rule that prohibited NCAA member schools from facilitating NIL negotiations between current student-athletes in the transfer portal or **high school students** and third-party collectives. (*See* Mem. of Law in Support of Mot. Prelim. Inj. at 1–2, ECF No. 2-1) (describing this class of persons—similarly to SB 536—as "prospective college athletes"). The parties reached a settlement in principle in January of 2025, (ECF No. 90)—the same month during which SB 536 was introduced in the legislature. *See* https://wapp.capitol.tn.gov/apps/BillInfo/Default.aspx?BillNumber=SB0536 (SB 536 proposed in

6

January 2025). The parties entered a consent judgment in March of 2025, and SB 536 passed in May of 2025. To the extent there exists any historical context probative of the text's meaning, it indicates that amending the statute to add "prospective student[s] who . . . can, in the future, . . . participate in an athletic program" extended the protections of Tenn. Code Ann. § 49-7-2803(a)(1) to high school students, not all persons who have made it past the ninth grade.

### 4. Plaintiff's Reading Would Raise Substantial Constitutional Questions, Which the Statute Must Be Construed to Avoid.

Under the canon of constitutional avoidance, where a statute is susceptible to two reasonable interpretations, but one interpretation would potentially render the statute unconstitutional, courts have a duty to avoid the potentially unconstitutional reading. *Clark v. Suarez Martinez*, 543 U.S. 371, 380–81 (2005); *Frisby v. Shultz*, 487 U.S. 474, 483–84 (1988) (describing state court's failure to apply canon of constitutional avoidance as "plain error"). While the NCAA submits its interpretation of the statute is the only reasonable one, it bears noting that Plaintiff's reading of the statute would render any eligibility rules impermissible. This would excessively burden the NCAA, an out-of-state economic actor, in its regulation of intercollegiate athletics, and thereby raises substantial questions under the Dormant Commerce Clause. *See, e.g.*, *NCAA v. Miller*, 795 F. Supp. 1476 (D. Nev. 1992), *aff'd*, 10 F.3d 633 (9th Cir. 1993), *cert. denied*, 511 U.S. 1033 (1994) (enjoining Nevada law providing certain due process protections for NCAA investigations of Nevada institutions under the Dormant Commerce Clause). Given the page and time limitations, the NCAA is not prepared to present a fulsome Dormant Commerce Clause analysis in this brief. But there is no question that Plaintiff's statutory construction would raise substantial constitutional questions, which is enough to reject it. To avoid doubt, the NCAA also reserves the right to pursue all appropriate remedies against Tennessee, including in this case, should this lawsuit proceed.

### 5. The Statute Has No Bearing on the Procompetitive Benefits Analysis at Issue.

Plaintiff cites no law that the existence of procompetitive benefits of a challenged restraint—which is an economic question of fact—can be usurped by state legislatures. Rather, as is a theme of his argument, Plaintiff takes language wildly out of context. Plaintiff's argument rests on a misleading citation to *Worldwide Basketball & Sports Tours, Inc. v. NCAA*, 388 F.3d 955, 959 (6th Cir. 2004)—a case that *supports* the NCAA's position that the rules at issue here are noncommercial. Specifically, Plaintiff argues that the case's references to "'legitimate procompetitive' justifications" means that there are illegitimate justifications, including those derogated by state law. (Supp. Br. at 7). That is, of course, not the holding of *Worldwide Basketball*, nor a proper application of antitrust principles. Ascertaining anticompetitive effects and procompetitive benefits under the rule-of-reason requires assessment of market effects—a question of economics, not public policy, about the net effect of the challenged restraint **on market competition**. *NHL Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 718 (6th Cir. 2003) ("The rule of reason, however, requires a court to analyze the . . . the restraint's **effect on competition**."). And there is no suggestion—in any Tennessee statute or case law—that the NIL statute in any way affects courts' antitrust analysis under the Tennessee Trade Practices Act. They are separate and distinct enactments.

Dated this 8th day of June, 2025.

Respectfully submitted,

*s/ Taylor J. Askew*
Taylor J. Askew (BPR 033193)
David J. Zeitlin (BPR 037664)
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
T: (615) 244-6380
F: (615) 244-6804
taylor.askew@hklaw.com
david.zeitlin@hklaw.com


Rakesh Kilaru
(*Pro Hac Vice* application pending)
Max Warren
(*Pro Hac Vice* application pending)
Wilkinson Stekloff LLP
2001 M Street N.W., 10th Floor
Washington, DC 20036
(202) 847-4000
rkilaru@wilkinsonstekloff.com
mwarren@wilkinsonsteloff.com

*Counsel for Defendant*
*National Collegiate Athletic Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2025, I electronically filed the foregoing NCAA Response to Plaintiff's Supplemental Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties and counsel of record.

Dated: June 8, 2025

By: *s/ Taylor J. Askew*
Taylor J. Askew
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, TN 37219
taylor.askew@hklaw.com

*Counsel for National Collegiate Athletic Association*